

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ASARE,<br><br>*Defendant*. | Case No. 3:26-cr- 5<br><br>18 U.S.C. § 1349<br>Conspiracy to Commit Mail Fraud<br>(Count One)<br><br>Forfeiture Allegation |

**CRIMINAL INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Criminal Information, unless otherwise stated:

1. The defendant, MICHAEL ASARE, resided at various addresses in the Eastern District of Virginia, including in Henrico and Fredericksburg, Virginia.

2. The defendant owned and operated several purported businesses in the Eastern District of Virginia, including KM69 Ventures LLC, Asare Auto LLC, and Helios Enterprise LLC. The defendant maintained business bank accounts for these companies, for which he was the only signatory.

3. In reality, these businesses were used to receive and disburse money from the below described fraudulent schemes.

4. The defendant's co-conspirators resided in various locations both in the United States and in Ghana.

1

## Count One
(Conspiracy to Commit Mail Fraud)

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

5. Beginning in or about at least January 2021 and continuing through in or about at least August 2025, in the Eastern District of Virginia and elsewhere, the defendant, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed to devise and attempt to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, and attempting to do so, caused any matter and thing to be sent and delivered by the United States Postal Service and private and commercial interstate carriers, in violation of Title 18, United States Code, Section 1341.

### *Object of the Conspiracy to Commit Mail Fraud*

6. The object of the mail fraud conspiracy was for conspirators to unjustly enrich themselves by fraudulently obtaining money which they were not entitled to by engaging in various fraud schemes, to include, but not limited to, defrauding elderly individuals the conspirators encountered on online dating websites of those elderly individuals' money and property by falsely professing a romantic attachment to the elderly individuals and then falsely claiming to have various pressing financial needs (for which conspirators solicited money from their targeted victims).

7. The conspirators directed the elderly individuals to send the defendant and his businesses those fraudulently solicited funds through a variety of methods, including both interstate wire transfers and checks sent via the United States Postal Service and private and commercial interstate carriers. The defendant then used these funds to enrich himself and his co-conspirators.

### *The Ways, Manner, and Means of the Conspiracy*

The ways, manner, and means by which the conspirators sought to accomplish the conspiracy included, but were not limited to, the following:

8. The conspirators used online dating websites, including Match.com, to meet elderly individuals residing in various states. Match.com is an online dating service based in Dallas, Texas. The conspirators created fictitious online personae, and used the false personae to pursue online relationships with potential targets of the scam. After identifying and contacting elderly individuals through Match.com and other online dating websites, the conspirators obtained those individuals' telephone numbers and, thereafter, communicated with the elderly individuals primarily by email, text messages, and phone calls.

9. The conspirators used various aliases when interacting with elderly individuals online and by phone and text, including "William Fisher," "Chris Orlando," "Steve Libby," and "Olivia Leah."

10. Shortly after purportedly establishing romantic relationships with the elderly individuals, the conspirators began asking them to send the defendant and the defendant's businesses money for various pressing financial needs. The conspirators' claims varied. For example, in one instance, a conspirator claimed that he worked in a cocoa bean import/export business in Germany; that he had recently received payment in gold bars located in Canada; and that he now needed money for customs and lawyer fees to get the gold bars through customs. In another example, a conspirator claimed to have received a large inheritance, but that he needed money to assist with recovering the inheritance. In a third example, a conspirator claimed to own a business in the Middle East, and that he needed the elderly individual to send money to the conspirator and others because he (the purported Middle Eastern business owner) was having

problems procuring an out-of-country bank account to negotiate his business' funds.

11.     Irrespective of the specific purported reasons for which the conspirators solicited money, the conspirators uniformly and falsely promised to repay that money to their victims from various sources and at various times, such as from (fictitious) business proceeds or a (fictitious) inheritance. In truth, the conspirators' various purported bases for seeking funds from their victims were deliberately and knowingly false.

12.     An essential part of the scheme was to collect the victims' money while avoiding suspicion from law enforcement and others. To do so, the conspirators relied upon direct and indirect contacts in the United States to provide United States addresses and bank accounts that could be provided to the victims for the victims to send or deposit the fraudulently solicited funds into. The defendant provided his co-conspirators with addresses and bank accounts within the defendant's control, maintained both in the names of defendant's business or other false or fictious names. The defendant's co-conspirators would then send these seemingly legitimate addresses and bank accounts to the elderly victims. By providing United States-based addresses and businesses, the defendant helped advance and conceal the fraud by perpetuating the conspirators' false personae's affiliation with the jurisdiction of the United States and concealing the fact that the false personae was being operated by an individual in Ghana. Disclosure of the Ghanian destination for the funds would have raised suspicion with victims and with the victims' banks, who were likely to recognize based on the victim's customer profile that their transfer of funds to Ghana was one carrying a high risk of fraudulent inducement or activity.

13.     The conspirators directed the elderly individuals to send the defendant and his companies the requested funds through various means. In some instances, the conspirators directed the elderly individuals to wire funds using interstate money transfer services or through

an electronic funds transfer directly from the victims' bank accounts. In other instances, the conspirators directed the elderly individuals to send checks through USPS, FedEx, UPS, and other interstate commercial carriers to various addresses within the defendant's control in the Eastern District of Virginia.

14. Believing and relying on the conspirators' misrepresentations concerning their identities and financial needs, their professed romantic interest in the elderly individuals, and their professed intent and ability to repay the solicited funds, the elderly individuals sent the defendant and his companies money as directed.

15. Through this and other related fraud schemes, the defendant and his co-conspirators defrauded at least twenty-three (23) elderly individuals from across the United States of at least $2,181,546 between at least January 2021 and August 2025.

16. Once the defendant and his businesses received the elderly individuals' money, the defendant rapidly depleted the funds through domestic and international wire transfers to co-conspirators, peer-to-peer transfers, personal purchases, and ATM cash withdrawals.

17. Contrary to their promises, the conspirators never repaid any of the victims' money.

18. None of these elderly individuals would have given the defendant money if they had known that the conspirators were not who they claimed to be; did not intend to pursue a romantic relationship with the elderly individual; would not spend the money on the expenses for which it had been sent; and could not and did not intend to repay those funds as claimed. Many of the victims were elderly and lost their life savings, family inheritances, and retirement funds as a result of the defendant's and his conspirators' fraud schemes.

### *Mailings in Furtherance of the Conspiracy*

19.     In furtherance of this conspiracy, the conspirators routinely caused to be delivered by U.S. mail and/or by private and commercial interstate carriers to addresses in the Eastern District of Virginia, the following matter: checks from elderly victims.

20.     On or about the date set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, the conspirators knowingly caused to be delivered by U.S. mail, according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, the following matter:

| Count | Victim Name | On or About Date | Description of Mail Matter |
|---|---|---|---|
| 1 | M.W. | March 6, 2023 | The mailing of a $34,000 cashier's check from victim M.W. in Illinois to Asare Auto LLC in the Eastern District of Virginia. |

(In violation of Title 18, United States Code, Section 1349.)

## **FORFEITURE ALLEGATION**

Pursuant to Rule 32.2(a) Fed. R. Crim. P., defendant, MICHAEL ASARE, is hereby notified that upon conviction of the offense alleged in Count One of this Criminal Information, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses. Property subject to forfeiture includes, but is not limited to:

The sum of at least $2,181,546, which represents the proceeds of the offense charged in Count One, which sum shall be reduced to a monetary judgment against the defendant in favor of the United States. This is a sum for which the defendant will be solely liable.

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with 18 U.S.C. § 981(a)(1)(C) incorporated by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).)

Respectfully submitted,

Lindsey Halligan
United States Attorney and Special Attorney

Todd W. Blanche
Deputy Attorney General

Robert K. McBride
First Assistant United States Attorney

Date:   January 8, 2026          By: _____
                                      Carla Jordan-Detamore
                                      Assistant United States Attorney